FILED
2022 Feb-01  AM 09:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CARLA JENKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-00995-LSC** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Carla Jenkins ("Jenkins" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Jenkins timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Also before the Court is Plaintiff's motion for remand pursuant to sentences four and six of 42 U.S.C. § 405(g). (Doc. 24.)

Jenkins was 48 years old at the time of her SSI application, and she completed two years of college. (Tr. at 47, 226.) Her past work includes experience as a laborer,

1

specifically at poultry boner. (Tr. at 47, 226.) Plaintiff claims that she became disabled on August 1, 2017. (Tr. 220).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since August 1, 2017, the alleged date of the onset of her disability. (Tr. 39.) According to the ALJ, Plaintiff's asthma, obesity, diabetes mellitus, ischemic heart disease, chronic obstructive pulmonary disease ("COPD"), depression, crack cocaine abuse disorder, anxiety, degenerative disc disease lumbar and thoracic spine with facet arthropathy, arthritis in bilateral knees, and sleep apnea are "severe impairments." (*Id*.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 40.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb stairs and ramps and is unable to climb ladders, ropes and scaffolding. She is limited to occasional balancing, stooping, kneeling, crouching and crawling. She would need to avoid concentrated exposure to temperature extremes, wetness and humidity; avoid concentrated exposure to dust, fumes, odors and poorly ventilated areas. She is able to understand, remember and apply simple routine instructions and concentrate and persist for extended periods in order to complete simple routine work tasks with

non-confrontational supervision and is able to maintain superficial work relationships with others, however, would need to avoid frequent intensive contact with the general public. She is able to adapt to routine work setting where changes are infrequent and introduced gradually. She would require a sit stand option defined as a brief positional change from sitting to standing and vice versa, with no more than on[e] change in position every 20 minutes and without leaving the work station so as not to diminish pace or production

(Tr. at 42-43.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. at 47.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at 48 years old, has at least a high school education, and is able to speak English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as a small product assembler, inspector and hand packager, and electrical accessory assembler. (*Id.* at 48.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 1, 2017, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

6

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.    Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for four reasons: (1) the ALJ did not give proper weight to the opinions of treating psychiatrist, Dr. Fredric Feist, and treating physician, Dr. Pascual Herrera, and failed to show good cause for doing so, (2) the ALJ did not properly consider Plaintiff's obesity pursuant to SSR 02-1p, (3) the Appeals Council erroneously denied review and failed to remand Plaintiff's claim after she submitted new, material, and chronologically relevant evidence, and (4) the ALJ's decision was not

based on substantial evidence when the submissions to the Appeals Council are taken into consideration. (Doc. 13 at 2.)

### A. Weight Given by the ALJ to the Opinion of Dr. Fredric Feist and Dr. Pascual Herrera

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Jenkins, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "asthma, obesity, diabetes mellitus, ischemic heart disease, COPD, depression, crack cocaine abuse disorder, anxiety, degenerative disc disease lumbar and thoracic spine with facet arthropathy, arthritis in bilateral knees and sleep apnea." (Tr. at 39.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 40.) Based on the determinations that the Plaintiff did not have an impairment or combination of

9

impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since her alleged onset date of August 1, 2017. (Tr. 40-48.)

Plaintiff asserts that the ALJ failed to give the proper weight to the opinions of Dr. Fredric Feist, as Plaintiff's treating psychiatrist, and of Dr. Pascual Herrera, as Plaintiff's treating physician, and further erred in failing to provide good cause for doing so. (Doc. 13 at 2.)

New regulations came into effect in 2017, which govern this case. These new regulations provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings, with the most important factors

10

being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927.

11

Plaintiff argues that the old rules apply to this case because the new rules do not supersede Eleventh Circuit precedent. (Doc. 18 at 4-8.) Plaintiff cites *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), for the proposition that the treating physician rule is still in effect in the Eleventh Circuit. (Doc. 18 at 5.) Plaintiff's reliance on this case is misplaced because the Eleventh Circuit appropriately applied 20 C.F.R. § 404.1527(c)(2) because the plaintiff in that case filed his claim in March of 2015, approximately 2 years before the new regulations would take effect. *Simon*, 7 F.4th at 1097, 1104.

Plaintiff also cites *Rose v. Saul*, a case out of the Eastern District of North Carolina, in which the court held that the new rules did not supersede Fourth Circuit precedent. No. 7:19-CV-91-BO, 2020 WL 4740479, at *3 (E.D.N.C. Aug. 14, 2020). The *Rose* court explained its holding as follows:

> The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of *Bird* and the cases that preceded it. *Bird* did not interpret a prior regulation, alterable by SSA. Rather, Bird followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Id.*

The Court notes first that *Rose* is distinguishable because it considered a case dealing with a disability determination by another government agency, rather than an opinion by a treating physician, that the ALJ did not discuss at all in her opinion.

12

*Id.* at \*2-\*3. In that case, the Department of Veterans Affairs ("VA") gave the Plaintiff a one hundred percent disability rating, and "the ALJ … did not mention—much less discuss—[Plaintiff's] 100% VA disability rating." *Id.* at \*3. The ALJ's opinion in Plaintiff's case does not make the same error. The ALJ explained that he considered Dr. Feist's opinion to be "less persuasive for it is not consistent with nor supported by the other treating sources who reported mental examinations that were more consistent with and supported by the residual functional capacity herein." (Tr. at 46.) The ALJ also explained his rational for finding Dr. Herrera's opinion to be similarly less persuasive because it was "inconsistent with the medical evidence as well as the claimant's daily activities, which had included working, albeit part time." (*Id.*)

Moreover, while Fourth Circuit precedent may establish the treating physician rule independent of the regulations, courts in the Eleventh Circuit have not reached the same conclusion. In one of the few Eleventh Circuit cases that mention this issue, the court stated, "For claims filed on or after March 27, 2017, … no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021). The court went on to explain that even under the regulations that apply to claims filed before March 27, 2017, the ALJ could still

13

reject the treating physician's opinion in certain circumstances when it was not supported by the evidence. *Id.* at 497.

Plaintiff also cites additional authority, including *Delgado v. Comm'r of Soc. Sec.*, No. 20-14234, 2021 WL 4099237, *1 (11th Cir. Sept. 9, 2021), *Shakeel v. Kijakazi*, No. 4:20-CV-01131-CLM, 2021 WL 5827206, at *2 (N.D. Ala. Dec. 8, 2021), and *Duncan v. Kijakazi*, No. 1:20-CV-90-JTA, 2021 WL 6125788, at *1 (M.D. Ala. Dec. 28, 2021), in support of her argument (doc. 25 at 2, 4, 6-7), but in each of these cases, the Court was applying the prior regulations because Mr. Delgado's claim was filed in March 2016, Mr. Shakeel's claim was filed in June 2013, and Ms. Duncan's claims was filed in October 2016, all well before the new regulations went into effect. In both *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501-JHE, 2021 WL 4409092, at *6 n.10 (N.D. Ala. Sept. 27, 2021) and *Mayfield v. Comissioner, Soc. Sec. Administrtaion,* No. 7:20-CV-01040-ACA, 2021 WL 5300925, at *4 (N.D. Ala. Nov. 15, 2021), the Court declined to resolve the question of which regulations apply because it found that the ALJ's analysis failed under either standard. In *Venable v. Kijakazi*, No. 4:20-CV-1741-AKK, 2021 WL 4894611, at *7 (N.D. Ala. Oct. 20, 2021), the Court determined that the new regulations applied because the Plaintiff's claim was filed in 2018. Accordingly, none of these cases cited by Plaintiff are persuasive.

Dr. Feist's assessment of Plaintiff's mental health on May 21, 2018, concluded that she could understand, remember, or carry out short and simple instructions. (Tr. at 535.) According to Dr. Feist, Plaintiff could sometimes maintain attention, concentration and/or pace for periods of at least two hours, but she could not perform activities within a schedule or be punctual within customary tolerances. (*Id.*) Dr. Feist also found that Plaintiff might be able to sustain an ordinary routine without special supervision and could adjust to routine and infrequent work changes. (*Id.*) Plaintiff could interact with co-workers, but she could not maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Feist also determined that Plaintiff would be off-task fifty percent of an eight-hour workday and would miss three days of work per month due to her psychological symptoms. (*Id.*) The assessment also indicated that these limitations existed back to August 1, 2017. (*Id.*) This assessment is inconsistent with and unsupported by records from the CED Mental Health Center, where Ms. Jenkins was seen on multiple occasions over the course of several years. (Tr. at 505-534.)

The ALJ specifically noted two visits to CED Mental Health Center, one on October 20, 2017, and the other on June 17, 2019. (Tr. at 44-45.) At the October 2017 intake visit, Plaintiff exhibited appropriate appearance, euthymic mood, normal affect, and was oriented to person, place, time, and situation. (Tr. at 511.) Plaintiff's

chief concern was anxiety over managing her 10-year-old son and his ADHD and looking for work. (*Id.*)  Notes from her visit also indicate weekly bouts with depression, trouble sleeping, and occasional suicidal thoughts. (*Id.*) At the June 2019 appointment, Plaintiff again exhibited euthymic mood, appropriate affect, appropriate and clean appearance, and she was oriented to person, place, time, and situation. (Tr. 756.) She again expressed concerns over her son's behavioral issues and anxiety related to medical concerns, particularly an upcoming knee surgery. (*Id.*) Treatment notes also show that Plaintiff received support from her church and a friend she talked to regularly to help with suicidal thoughts. (Tr. 757.) Her regular attendance at church and AA meetings were listed as strengths, while she struggled with anxiety, self-medication, depression, isolation, anger, and suicidal thoughts. (Tr. 758.)

At a subsequent appointment on February 27, 2019, not specifically referenced by the ALJ, her therapy notes include that Plaintiff "reported improvement in her depression symptoms." (Tr. 761.) She also denied suicidal ideations and saw an improvement in her mood since moving into her own apartment. (*Id.*) Treatment notes also indicate that she was staying active in her church, attending doctor appointments to address her health issues, and taking her medications regularly. (*Id.* at 761-62.)

Based on this evidence, the ALJ could properly find that Dr. Feist's assessment of Plaintiff's limitations is inconsistent with the medical record and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Feist's opinion.

Similarly, the ALJ's conclusion that Dr. Herrera's assessment was less persuasive was also supported by the record. Dr. Herrera completed a physical capacities form for Plaintiff on May 30, 2018. (Tr. 536.) According to Dr. Herrera's assessment, Plaintiff can sit upright for less than 30 minutes at a time and can stand for less than 15 minutes at a time. (*Id.*) Plaintiff would be lying down, sleeping, or sitting with legs propped at waist level or above for five hours out of an eight-hour workday, and she would be off-task fifty percent of the day. (*Id.*) When asked how many days of work Plaintiff would miss in a thirty-day period, Dr. Herrera simply responded that Plaintiff "can't work." (*Id.*) Dr. Herrera also indicated that Plaintiff's limitation existed back to August 1, 2017, and her condition was expected to last twelve months of longer. (*Id.*) Dr. Herrera listed hearth problems, shortness of breath, pain in the back, and COPD as the causes of Plaintiff's limitations. (*Id.*) The ALJ explained that she found this assessment to be less persuasive not only because it was inconsistent with other medical evidence but also because it was inconsistent with Plaintiff's daily activities, including working part time. (Tr. 46.)

He also indicated that Dr. Herrera's opinion was less persuasive because it "contain[ed] no direct nexus or explanation between the diagnosis to which he opined… or how these limitations related back to August 1, 2017…." (*Id.*)

In contrast, a few months earlier, Dr. Herrera saw the plaintiff when she went to Quality of Life to be seen for her hypertension and congestive heart failure on February 28, 2018. (Tr. 44, 584-92.) Dr. Herrera noted that Plaintiff's hypertension was stable and that her congestive heart failure had been managed with ACE inhibitor therapy. (Tr. 584.) Plaintiff's physical exam showed that while she was obese, she was in no acute distress and her constitution was well developed. (Tr. 588.) Her neck and extremities, along with her cardiovascular, vascular, musculoskeletal, and neurological systems also showed normal results. Her respiratory system was normal, albeit with decreased breath sounds. (Tr. 589.) Her musculoskeletal exam did show pain and weakness due to severe osteoarthritis in her left hand and mild osteoarthritis in her right hand, as well as tenderness in her left knee and swelling in her right knee. (*Id.*) Her gait, however, was normal, and she exhibited a normal range of motion. (*Id.*)

On February 11, 2019, Plaintiff was seen by Dr. Thomas Pugliese for blood in her stool. (Tr. 638-43.) Her treatment notes show that while she reported chest pain with exertion and nausea and vomiting, she denied any shortness of breath, painful

or swollen joints, and depressed mood. (Tr. 639.) In Dr. Pugliese's general exam, he found Plaintiff's appearance to be "comfortable, alert and oriented, in no acute distress." (*Id.*) He also noted full range of motion in her neck, regular heart rate and rhythm, clear to auscultation in her lungs. (*Id.*)

Later that month, she saw Dr. William Haller III, an orthopedic specialist, for monovisc injections in her knees. (Tr. 777-81.) Dr. Haller noted that she reported joint pain and stiffness, but no muscle pain, cramps, swelling, or joint swelling. (Tr. 778.) Her range of motion was 100 degrees flexion and 0 degrees extension in her right knee and 110 degrees flexion and 0 degrees extension in her left knee. (Tr. 779.) After discussing the risks and the failure to manage her osteoarthritis with more conservative measures, Dr. Haller recommended a total knee replacement. (Tr. 779, 781.)

Based on this evidence, the ALJ could properly find that Dr. Herrera's assessment of Plaintiff's limitations is inconsistent with the medical record and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Herrera's opinion.

### B. ALJ Consideration of Plaintiff's Obesity

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.5121, 416.921; Social Security Ruling(s) ("SSR"s) 88-28, 96-3p, and 96-4p. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Jenkins, as the plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1278.

"In claims in which there are no medical signs or laboratory findings to

20

substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step [two] of the sequential evaluation process." SSR 96-4p. The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 404.1508 (an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [individuals'] statement[s] of symptoms"); *see also* 20 C.F.R. § 404.1528 (defining symptoms, signs, and laboratory findings). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p.

Here, Plaintiff alleges limitations based on congestive heart failure, COPD, degenerative disc disease, sleep apnea, high blood pressure, gastroesophageal reflux, fatty liver, Hepatitis C, severe anxiety, obesity, and severe depression with psychotic tendencies. (Tr. at 225.) The ALJ concluded that Plaintiff had several severe impairments: "asthma, obesity, diabetes mellitus, ischemic heart disease, COPD, depression, crack cocaine abuse disorder, anxiety, degenerative disc disease lumbar and thoracic spine with facet arthropathy, arthritis in bilateral knees and sleep

apnea." (Tr. 39.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40)

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's obesity, alleging that the ALJ "makes no reference to obesity and does not explain how [her] gross weight would affect her ability to function in a work setting." (Doc. 13 at 27.) The Commissioner disagrees and asserts that the mere fact of Plaintiff's diagnosis as obese "does not establish that the obesity caused disabling limitations beyond those the ALJ assessed." (Doc. 17 at 24.) The Court agrees with the Commissioner.

First, Plaintiff's contention that the ALJ made no reference to her obesity is false. In fact, obesity was the very first impairment that the ALJ discussed when considering whether Plaintiff's impairments meet or medically equal the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40.) The ALJ described his analysis and the standard for evaluating Plaintiff's obesity as follows:

> The claimant's obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work and ability to perform activities of daily living. Although obesity is no longer a listed impairment, SSR 02-01 provides important guidance on evaluating obesity in adult and child disability claims. The Administrative Law Judge is required to consider obesity in determining whether a claimant has medically determinable

22

> impairments that are severe, whether those impairments meet or equal
> any listing, and determining the claimant's residual functional capacity.
> Obesity is considered severe when, alone or in combination with
> another medically determinable physical or mental impairment, it
> significantly limits an individual's physical or mental ability to do basic
> work activities (SSR 02- 01). The undersigned has earlier found
> claimant's obesity to be severe, but the signs, symptoms and laboratory
> findings of their obesity are not of such severity as found in any listing.
> Claimant's limitations due to obesity are reflected in the below residual
> functional capacity.

(Tr. 40.) The ALJ acknowledged that Plaintiff's obesity was not disabling, but he

considered its impact on her ability to work and perform necessary daily tasks and

accounted for it in the RFC. (*Id.*)

The ALJ further addressed Plaintiff's obesity at multiple points throughout

his opinion. In describing Plaintiff's visit to Gadsden Regional on December 27,

2017, the ALJ acknowledged Plaintiff's history of obesity and described how her

assessment noted obesity. (Tr. 44.) In his discussion of her visit to Quality of Life on

February 28, 2018, the ALJ recognized that obesity was included as a risk factor in

Plaintiff's records. (*Id.*) The ALJ also included Plaintiff's history of obesity in his

discussion of Plaintiff's visit to the hypertension clinic on April 30, 2018, and to UAB

Medicine on July 30, 2018. (Tr. 44.) The ALJ also noted that Plaintiff had a body

mass index of 50 when describing the notes from her visit to Quality of Life on

September 5, 2017. (Tr. 43.) The ALJ also questioned Ms. Jenkins about her height

and weight at her hearing and included a question to the VE about additional breaks

"due to a combination of mental and physical impairments including obesity and issues with pain." (Tr. 60, 65-66.)

From the record, it seems clear that the ALJ thoughtfully considered Plaintiff's obesity and the associated limitations when assessing her RFC and the possible jobs that Plaintiff would be qualified to perform. This Court finds no error by the ALJ in assessing Plaintiff's obesity.

### C. Appeals Council Review

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. §§ 404.900(b), 416.1400(b). The Appeals Council has discretion to deny review of the ALJ's decision. *See* 20 C.F.R. §§ 404.967, 416.1467. The version of 20 C.F.R. § 404.970 that applies to this case states that the Appeals Council will consider additional evidence if Plaintiff had good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935 and there is "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see also* 81 FR 90987 (explaining the new rules are effective January 17, 2017).

Further, the Commissioner's internal policy provides guidance on the meaning of "material" and chronological relevance and what it means for the Appeals Council to determine there is not a reasonable probability that the additional evidence would change the outcome of the decision. Hearings, Appeals, and Litigation Law Manual (HALLEX), § I-3-3-6, 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" if it is "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id*. It explains that additional evidence "relates to the period on or before the date of the hearing decision" (i.e., is chronologically relevant) "if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id*. The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.*

The ALJ issued his decision on September 6, 2019. (Tr. at 49.) Plaintiff subsequently submitted four new pieces of evidence to the Appeals Council: (1) medical records from Quality of Life Health Services dated July 9, 2019; (2) a psychological evaluation from Dr. June Nichols dated October 23, 2019; (3) a medical source statement from Dr. Nichols dated November 12, 2019; and (4)

medical records from Qualify of Life Health Services dated September 19, 2019. (Tr. at 2, 19-33, 68-77; Doc. 16-1 at 3.) The Appeals Council denied Plaintiff's request for review despite this newly submitted medical evidence, based on a determination that the new evidence did not show "a reasonable probability that it would change the outcome of the decision." (Tr. at 1-2.) The Appeals Council also noted that the medical records dated September 19, 2019, did not relate to the period at issue because the ALJ decided the case through September 6, 2019. (*Id.* at 2.)

Plaintiff challenges this determination, seemingly suggesting that the Appeals Council committed legal error by erroneously refusing to consider the evidence. (Doc. 13 at 28-29.) Plaintiff also cites *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) for the proposition that the proper standard of review is whether there is a reasonable *possibility* that the new evidence would change the result, rather than a reasonable *probability* of a different outcome due to the new evidence. (*Id.* at 29.)

The new rules, which came into effect in 2017 and govern in this case, dictate that the Appeals Council will review a case when it "receives additional evidence…, and there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5) (emphasis added); *see also Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-01 (Dec. 16. 2016). Plaintiff

points to *Washington v. Soc. Sec. Admin.*, (doc. 13 at 28), as an example in which the court determined that the Appeals Council erred for failing to consider "new, material, and chronologically relevant evidence." 806 F.3d 1317, 1321-23 (11th Cir. 2015). In *Washington*, however, the Eleventh Circuit appears to use the terms "possibility" and "probability" interchangeably when articulating the standard, suggesting that the difference between the meaning of the two terms in this context is not so great to produce a different result. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321-22 (11th Cir. 2015). Moreover, *Washington* was decided two years before the Social Security Administration revised the regulations and clarified that the proper consideration for the Appeals Council is whether there is a reasonable probability that the additional evidence would change the outcome of the decision.

The additional evidence consists of four records. First, the Appeals Council rejected the September 19, 2019, records from Quality of Life Health Services because they do not relate to the period at issue, which ended on September 6, 2019, when the ALJ issued his decision. (Tr. 2.)

The Appeals Council determined that the other, chronologically relevant evidence did not show a reasonable probability that it would change the outcome of the decision. (Tr. 2.) Plaintiff offers no analysis as to why the additional evidence

27

would raise a reasonable probability of a different outcome, and the Court finds none in its examination of the record.

The first piece of evidence consisted of medical records from Quality of Life, dated July 9, 2019. (Tr. 2, 23-33.)  The records list non-alcoholic fatty liver disease, degenerative disk disease, Hepatitis C, hypertension, and depression among Ms. Jenkins's ailments. (Tr. 23.) All of those issues were either raised by Plaintiff in her application or actually found by the ALJ to be severe impairments of the Plaintiff. (Tr. 39, 225.) While Plaintiff rated her pain at an intensity level of 10/10, her physical exam revealed normal findings in every area, except for decreased strength in her hands. (Tr. 29.) Plaintiff's cardiovascular exam showed regular rate and rhythm with no murmurs, gallops, or rubs. (*Id.*) Psychologically, she was oriented to time, place, person, and situation, exhibited appropriate mood and affect and normal insight and judgment. Her neurological exam also revealed normal memory with her cranial nerves grossly intact, as well as normal sensation and deep tendon reflexes. (*Id.*) The Court sees nothing in this record that is would be reasonably likely to change the outcome.

The other records, which appear to be the focus of Plaintiff's challenge, consisted of a psychological evaluation and medical source statement from Dr. June

Nichols. (Tr. 2, 19-22, Doc. 16-1 at 3.) Dr. Nichols summarized her findings from

the psychological evaluation, which was performed on October 23, 2019, as follows:

> She appeared able to understand instructions, but might have difficulty
> remembering complex instructions to carry them out. She is likely
> unable to sustain concentration and persist in a work relate [sic] activity
> at a reasonable pace. She is unable to maintain effective social
> interaction on a consistent and independent basis with supervisors,
> coworkers, and the public. She is unable to deal with normal pressures
> in a competitive work setting. She is able to manage her own funds.

(Tr. 22.)

Dr. Nichols also indicated that Plaintiff became drowsy and sleepy during the

interview, which Plaintiff attributed to a reaction to her medications. (Tr. 20-21.)

Notes also indicate that Plaintiff was oriented to person, place, time, and situation,

and her thought processes and conversation pace was within normal limits. (Tr. 21.)

Dr. Nichols reported seeing "no evidence of confusion, loose associations,

tangentiality, flight of ideas, or thought blocking." (*Id.*) While Dr. Nichols found no

evidence of delusions, her evaluation showed that Plaintiff's thought content was

"positive for visual hallucinations." (*Id.*) Plaintiff also confirmed experiencing panic

attacks. (*Id.*)

The evaluation showed that Plaintiff's mental processing speed was adequate,

but Plaintiff showed signs of "significant problems with short term memory and

working memory," based on ability to recall two of three objects after a period of ten

minutes and to repeat six digits forward and four digits backward. (*Id.*) Dr. Nichols noted that Plaintiff showed an adequate general fund of knowledge, including good awareness of current events. (*Id.*) Plaintiff was also able to think abstractly, such as completing similarity items adequately and interpreting proverbs. (*Id.*)

Dr. Nichols also completed a mental health source statement on November 12, 2019. (Doc. 16-1 at 3.) In that document, Dr. Nichols reiterated that Plaintiff could understand, remember, or carry out short and simple instructions. (*Id.*) However, she determined that Plaintiff would not be able to maintain attention, concentration, and/or pace for at least two hours, would not be able to perform activities within a schedule or be punctual within customary tolerances, and would not be able to sustain an ordinary routine without special supervision. (*Id.*) Nor did Dr. Nichols believe that Plaintiff could adjust to routine and infrequent work changes or interest with supervisors and coworkers. (*Id.*) Dr. Nichols also opined that Plaintiff would be unable to maintain socially appropriate behavior and adhere to basic standards or neatness and cleanliness. (*Id.*) Dr. Nichols anticipated that Plaintiff would be off-task fifty percent of an eight-hour workday but would miss zero or one days of work in a thirty-day period. (*Id.*) Dr. Nichols also indicated that the limitations she described existed back to August 1, 2017. (*Id.*)

This evidence, when considered with the whole record, does not create a reasonable probability that the ALJ would change his decision. The ALJ noted in his decision that Plaintiff is able to help care for her children and pets, handle her personal care, prepare meals, perform cleaning tasks, such as laundry, ironing, dishes, and sweeping. (Tr. 43, 238-40.) She can drive, shop in stores, attend church and doctor appointments, spend time with others, as well as pay bills and manage a savings account. (*Id.* at 43, 241-42)    Moreover, evidence within the record demonstrates that Plaintiff was consistently oriented to time, place, person, and situation and/or exhibited normal mood, affect, cognition, and speech. (*See* Tr. at 366, 377, 394-95, 411, 417, 427, 438, 441, 445, 451, 459, 464, 474, 500, 511-12, 532, 540, 545, 581, 589, 598, 630, 710, 718, 756, 761.) Her attention and concentration ranged from normal to fair/adequate to obsessive/compulsive thoughts with flight of ideas (*See* Tr. 395, 417, 438, 446, 459, 464, 473, 500, 506, 513, 532, 540, 545, 579, 581, 598, 710, 718.)   Plaintiff had also exhibited similar behavior as in her interview with Dr. Nichols, falling asleep during an evaluation, after receiving a PRN injection. (Tr. 412.) The ALJ also concluded that sleep apnea was one of Plaintiff's severe impairments and accounted for it and the limitations associated with it when reaching his determination of Plaintiff's RFC. (Tr. 39,43)  Given that the ALJ had the opportunity to review the record and note these fluctuations in Plaintiff's mood,

memory, attention, concentration, insight, and judgment, the Court finds that the information presented by Dr. Nichols added little new insight into Plaintiff's condition and limitations.

The findings in the newly submitted records do not create a reasonable probably that of a different result in the ALJ's decision, especially considering the information that was already considered in the record before him. Additionally, Plaintiff failed to provide an explanation of how such evidence would change the ALJ's decision.

### D. Substantial Evidence to Support the ALJ's Decision

Plaintiff argues that the ALJ's decision was not based upon substantial evidence because (1) the ALJ "repudiated the opinions of the treating psychiatrist and the treating physician" and (2) the hypothetical questions posed to the VE did not include a complete or accurate statement of Plaintiff's limitations and impairments. (Doc. 13 at 29.) As discussed above, the opinions of Plaintiff's treating physician and treating psychiatrist were not entitled to special weight by virtue of the fact that they had a treating relationship with Plaintiff. (*See* Section A *supra*.) For the same reasons discussed above, the Court also finds that substantial evidence supports the Commissioner's decision.

The Court now turns to Plaintiff's argument that substantial evidence does not support the ALJ's decision based on the hypothetical questions posed to the VE. For the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of [Plaintiff's] impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must pose a hypothetical question to the VE which comprehensively describes the Plaintiff's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that since the hypothetical question upon which the expert based his testimony failed to assume the existence of psychological problems, which the ALJ found to be severe, the decision was not based on substantial evidence).

Here, the ALJ posed the following hypothetical questions to the VE:

ALJ: Okay, Ms. Ward, let me give you a couple of hypotheticals here. Assume a hypothetical individual with the same vocational profile as the claimant. Assume that individual would be limited to light work. The individual would be further limited to just occasional climbing of stairs and ramps, unable to climb ladders or scaffolding. Would be limited to just occasional balancing, stooping, kneeling, crouching, or crawling. Would need to avoid concentrated exposure to temperature extremes, wetness and humidity. Would need to avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. The individual would be capable of understanding, remembering, and applying simple and routine instructions, and concentrating and persisting for extended periods of time in order to complete simple and routine work tasks, with nonconfrontational supervision. The individual would be capable of maintaining superficial work

relationships with others; however, they would need to avoid frequent contact with the general public. Would be capable of adapting to a routine work setting where changes are infrequent, well explained, and introduced gradually. Do you need any clarification on any of those limitations?

VE: No, Your Honor. Thank you.

ALJ: Would that individual be able to perform any of the claimant's past work?

VE: No, Your Honor.

ALJ: Can you identify any other jobs in the national economy that this individual can perform?

VE: Yes, Your Honor. Jobs that would fit within the hypothetical would be the job of a Marker DOT#209587034 SVP of 2, light. Nationally there are 300,000. The job of an Inspector and Hand Packager DOT#559687074 SVP of 2, light. Nationally there are 80,000. The job of Small Products Assembler DOT#706684022 SVP of 2, light. Nationally there are 45,000.

ALJ: Now, if we added to the first hypothetical one more limitation, and that would be that the individual would require a sit/stand option, and I am defining that as a brief positional change from sitting to standing and vice versa, with no more than one change of position every twenty minutes and without leaving the work station so as not to diminish pace or production. Would those three jobs that you identified, could they be done with a sit/stand option as described?

VE: The Small Products Assembler and the Hand Packager, I would reduce the numbers on those by fifty percent to take that into account, but there are some places that do allow them to sit and stand. The Marker, I don't think that job could be performed. Another job that I could put in that place would be that of an Electrical Accessory Assembler DOT#729687010 SVP of 2, light and nationally there are 31,000. And those are the numbers for the sit/stand option.

ALJ: Okay, for my final hypothetical, consider all of the limitations contained within the second hypothetical. However, we would add that, due to a combination of mental and physical impairments including obesity and issues with pain, the individual would require three additional breaks during a typical workday. These would be unscheduled breaks and be in addition to normal work breaks with each break lasting up to fifteen minutes in duration. How would that impact your testimony, if any?

VE: It would be my opinion that a person would not be able to maintain a job if they had to take that many breaks consistently, Your Honor.

ALJ: Okay. Is the remaining portion of your testimony consistent with the DOT?

VE: The sit/stand option and the break issue are not addressed by the DOT, so for those I am relying on my knowledge of the jobs and my knowledge and experience of the requirements of competitive work. I think everything else is consistent with the DOT.

(Tr. at 64-66.)

Plaintiff argues that the hypothetical questions posed by the ALJ "did not accurately state Claimant's pain level, her mental problems, or her residual functional capacity" and asserts that the questions assumed Plaintiff's ability to perform light work. (Doc. 18 at 11.) Plaintiff also argues that when the VE considered all of Plaintiff's impairments, she determined that there were no jobs Plaintiff could perform. (*Id.* at 12; Doc. 13 at 30.) The Court disagrees.

The hypothetical questions posed by the ALJ comprehensively cover all of Plaintiff's impairments. *Pendley*, 767 F.2d at 1563. In commenting on the RFC, the

ALJ explained his determination that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 43.) The ALJ also stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consisted with the objective medical evidence and other evidence." (*Id.*)

The ALJ concluded, rather than assumed, that Plaintiff was able to perform light work with certain exceptions and limitations. (Tr. 42.) The ALJ also accounted for Plaintiff's pain level by including the sit/stand option as a limitation in Plaintiff's RFC and by limiting climbing of stairs and ramps, along with balancing, stooping, kneeling, crouching, and crawling, to only occasional frequency, and eliminating climbing ladders, ropes, and scaffolding altogether. (*Id.*) Plaintiff's mental health was accounted for by ensuring that she would be able to avoid "frequent intensive contact with the general public," while still allowing for non-confrontational supervision and superficial work relationships. (*Id.*)

After reviewing the record, the ALJ determined that "the evidence of the claimant's daily activities along with the objective medical evidence discussed above establishes the claimant has a greater sustained capacity than she alleges." (Tr. 46.)

36

Plaintiff acknowledged that she could drive, help care for her children and pets, perform housework, shop, handle her personal care, attend church and medical appointments, and manage her savings account. (Tr. 43, 238-45.) The ALJ went on to say that Plaintiff's "subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with the limitations as set forth." (*Id.*)

All of Plaintiff's limitations were comprehensively covered by the ALJ's hypothetical questions. This Court's review of the record leads it to the conclusion that substantial evidence supports the ALJ's determination of Plaintiff's RFC. Accordingly, the ALJ did not err.

## IV.    Motion to Remand Pursuant to Sentences 4 and 6

The Court will now address Plaintiff's separately filed motion to remand her case to the Commissioner.  (Doc. 23.) Plaintiff's argument for remand pursuant to Sentence 4 of 42 U.S.C § 405(g) is based on one of the same arguments presented in her appeal of the Commissioner's decision: lack of substantial evidence to support the ALJ's decision to discount the opinions of treating physician, Dr. Herrera, and treating psychologist, Dr. Nichols. (Doc. 23 at 1.)

Plaintiff also moved the Court to remand the case pursuant to Sentence 6 of 42 U.S.C. § 405(g) based on a fully favorable SSI decision which was issued on April 4, 2021, for a new claim filed on July 21, 2020. (*See* Docs. 23 at 1; 23-1 at 1.)  Plaintiff filed her initial claim for benefits on January 8, 2018. (Tr. 37.) After the ALJ issued his decision on September 6, 2019, denying Plaintiff's claim, Plaintiff requested review by the Appeals Council.  (Tr. at 1.)  Plaintiff submitted additional evidence to the Appeals Council for consideration, as discussed above. (Tr. at 2, 19-33, 68-77; Doc. 16-1 at 3.)  The Appeals Council's denied review on June 19, 2020, based on the fact that the medical records dated September 19, 2019, were not chronologically relevant and based on its determination that the other additional evidence Plaintiff submitted was not reasonably likely to produce a different result. (Tr. at 1-2.) Plaintiff now submits additional evidence in the form of a fully favorable SSI decision on her subsequent claim, which was filed on July 21, 2020, and approved by the Commissioner on April 5, 2021, attached to her motion as Exhibit A. (Doc. 23-1.)

"Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  A sentence four remand is appropriate when "evidence properly presented to the

38

Appeals Council has been considered by the Commissioner and is part of the administrative record." *Id.* at 1269. Remand to the Commissioner is proper under sentence six when new and material evidence that was **not** incorporated into the administrative record for good cause comes to the attention of the district court. *Id.* at 1267; *see Milano v. Bowen*, 809 F.2d 763, 766-67 (11th Cir. 1987) (ordering sentence six remand based on evidence first properly submitted to the district court).

As noted above, Plaintiff requested remand pursuant to sentence four of § 405(g) because she believed the ALJ's decision was not based on substantial evidence due to the fact that he found the opinions of Plaintiff's treating physician and treating psychologist less persuasive. (Doc. 23 at 1; Tr. 46.) For the same reasons articulated above in *Section III.A*, the Court denies remand pursuant to Sentence 4 of 42 U.S.C. § 405(g).

The Court turns now to Plaintiff's other basis for remand, a subsequent favorable SSI decision. Remand is only appropriate under sentence six if this Court finds the claimant has proven that "(1) there is new, non-cumulative evidence; (2) the evidence is 'material' in that it is relevant and probative so that there is a reasonable probability that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level." *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) (citing *Caulder v. Bowen*, 791 F.2d 872,

877 (11th Cir. 1986)). The subsequent favorable SSI decision is arguably new evidence, and it was not available at the time the ALJ rendered his opinion in Plaintiff's 2018 claim, so Plaintiff had good cause for failing to submit it then.

The question remains whether the subsequent decision is "material." The Commissioner argues that Eleventh Circuit precedent establishes that a subsequent favorable decision is not enough, on its own, to support sentence six remand and because Plaintiff has not provided any additional supporting evidence or any explanation as to how the subsequent decision relates to the period considered by the ALJ, the evidence is not chronologically relevant, and therefore, not material. (Doc. 24 at 2-3.) Plaintiff cites *Blum v. Berryhill*, for the proposition that if the claim was remanded due to lack of substantial evidence, the subsequent favorable decision should be considered. No. 3:16-CV-2281, 2017 WL 2463170, at *12 (M.D. Pa. June 7, 2017) ("[E]xtra scrutiny of the record upon remand is warranted in a case where remand is required because the reviewing court determines that the earlier decision is not based on substantial evidence."). (Doc. 23 at 3.)

In contrast to *Blum*, however, this Court has found that substantial evidence supported the ALJ's decision that Plaintiff was not disabled as of September 6, 2019. The fact that another ALJ later found that Plaintiff was disabled as of July 21, 2021, is not evidence to the contrary. As the Eleventh Circuit stated in *Hunter v. Soc. Sec.*

*Admin., Comm'r*, "A decision is not evidence any more than evidence is a decision." 808 F.3d 818, 822 (11th Cir. 2015). The court further explained, "In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions." *Id.* Plaintiff counters that "the evidence supporting a subsequent favorable decision may constitute new and material evidence under § 405(g)." *Lindsey v. Comm'r of Soc. Sec.*, 741 F. App'x 705, 710 (11th Cir. 2018).

As the Commissioner notes, however, Plaintiff does not offer any further explanation as to the evidence or the basis for the different outcome or how that information might relate to the period the ALJ considered in Plaintiff's 2018 claim. (Doc. 24 at 3.) Furthermore, the subsequent decision offered by Plaintiff is dated over a year after the ALJ's determination that Plaintiff was not disabled on September 6, 2019. (*See* Doc. 23-1 at 1; Tr. 49.) In *Hunter*, the Eleventh Circuit declined remand when only one day separated the contrary disability determinations. *Id.* at 820, 822. For these reasons, the Court finds that Plaintiff has failed to meet her burden to show that the subsequent decision is material, and therefore, remand is not appropriate. Her motion (doc. 23) is accordingly due to be denied.

## V.    Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 1, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728